## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) | FULL FORTUNE INTELLECTUAL LIMITED, | ) ) ) |
| | Plaintiff, | ) ) |
| v. | | ) ) Case No. CIV-22-784-D |
| (1) | JOY MURPHY, | ) ) ) |
| | Defendant. | ) |

## **Complaint**

1.      Plaintiff Full Fortune Intellectual Limited ("FFIL" or "Plaintiff") is based in Hong Kong and is the owner of the extremely popular HEY DUDE brand.  The HEY DUDE brand includes high-quality, comfortable, stylish, and affordable shoes and related products.  In February 2022, FFIL was acquired by Crocs Malta Holdings Ltd, a wholly owned subsidiary of Crocs, Inc., a Colorado-domiciled Delaware corporation (collectively, "Crocs").

2.      Soon after the acquisition was finalized, Defendant Joy Murphy ("Defendant") sought to profit from the immense success of the HEY DUDE brand.  On March 28, 2022, Defendant, through her attorney, contacted Crocs offering to sell the domain name <www.heydude.com> (the "Infringing Domain Name").  Defendant was seeking a windfall, and her demands were exorbitant.  She gave Crocs two options: purchase the domain from her for ***$10,000,000*** or lease the domain from her for ***$1,000,000 per year for a minimum of five years***.

3.      To protect its consumers from potential confusion, fraud, abuse or other illegal activities, Plaintiff brings this action alleging a violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

### The Parties

4.      Plaintiff Full Fortune Intellectual Limited is based in Hong Kong and is a wholly owned subsidiary of Crocs.  FFIL is the owner of various HEY DUDE trademarks and related intellectual property.

5.      Upon information and belief, Defendant Joy Murphy is an individual residing in Oklahoma City, Oklahoma, and is the current registrant of the Infringing Domain Name.

### Jurisdiction

6.      The Court has jurisdiction over the federal cause of action alleged in this complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C § 1121(a).

7.      The Court has personal jurisdiction over Defendant and venue is proper because, upon information and belief, Defendant was domiciled in this district at the time this action was commenced and because a substantial part of the activities giving rise to this complaint occurred in and arise from an address in this district.

### The HEY DUDE Trademarks

8.      The HEY DUDE brand was born in 2008 in Florence, Italy when Alessandro Rosano started to make shoes that looked like modern footwear, but were as comfortable as slippers.  By February 2009, the first HEY DUDE shoe had reached the market.  Ten years later, in 2019, HEY DUDE shoes were sold in over 20 different countries, in over 5,500 stores, and had sold over 10 million pairs worldwide.

9.      FFIL invested significant resources into promoting its HEY DUDE-branded shoes, especially through online and digital channels.  Prior to March 2022, the HEY DUDE brand received accolades and recognition from the media and consumers including by, for instance, receiving a call-out by Woody Harrelson on The Ellen DeGeneres Show; being featured or talked about in fashion articles including in Forbes, Vice, BuzzFeed, and Yahoo! News; commonly being touted by online streamers and content creators; and consistently being one of the top-rated shoes on the Amazon.com marketplace.  Currently, social media accounts for the HEY DUDE brand have over 1 million collective followers and subscribers.

10.      In the last two calendar years (2020 and 2021), FFIL had combined sales of over $770 million of its HEY DUDE-branded shoes, the majority of which were made in the United States.

11.      FFIL offers its HEY DUDE-branded footwear online and in brick-and-mortar stores, including through websites located at www.heydudeshoes.com and www.heydudeshoesusa.com, and has sold HEY DUDE shoes since 2009.  Nearly half of the sales of HEY DUDE-branded goods are made through online websites.

12.      FFIL owns exclusive rights to numerous trademarks and service marks, including the distinctive and well-known HEY DUDE trademarks, and has used the marks to advertise, promote and provide its products since at least as early as 2009.

13.      Through  FFIL's  extensive  efforts,  including  substantial  promotion, advertising, and marketing, consumers came to identify—and continue to identify—HEY DUDE as exclusively connected to FFIL.

157986599.5 x

14.     As a result of its continuous, extensive, and exclusive use for numerous years, the HEY DUDE brand has achieved widespread recognition, and FFIL owns valid and subsisting common law rights to the HEY DUDE mark.

15.     In addition to its extensive common law rights, FFIL owns numerous United States applications and registrations for its HEY DUDE marks, including but not limited to United States Registration Number 5516629; United States Registration Number 5908627; and United States Registration Number 5455302.  Copies of these registration certificates are attached to this complaint as Exhibits 1-3.  FFIL's common law and registered HEY DUDE trademarks are collectively referred to in this complaint as the "Hey Dude Trademarks."  The Hey Dude Trademarks cover various clothing apparel including flip flops, hats, hoodies, t-shirts, and shoes.

16.     The value and strength of the HEY DUDE brand that has been built over the course of the last fourteen years is immense, as demonstrated by Crocs' acquisition of the brand and FFIL in February 2022 for $2.5 billion.

17.     FFIL's use of the Hey Dude Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive.  FFIL has made, and continues to make, a substantial investment of time, effort, and expense in the promotion of HEY DUDE-branded apparel and footwear, and the Hey Dude Trademarks.  As a result of these efforts and use, the Hey Dude Trademarks are distinctive and well-known, and are recognized within the United States and around the world as signifying high quality, authentic goods and services.

157986599.5 x

## Defendant's Bad Faith Registration, Use and Trafficking of the Infringing Domain Name

18.      On information and belief, Defendant registered the Infringing Domain Name in her own name on or around March 13, 2022. Prior to her taking ownership of the domain in 2022, and according to the publicly available WHOIS information, the Infringing Domain Name was registered to a company named Bluehour, LLC.

19.      On information and belief, for the entire time Defendant has been the registrant of the Infringing Domain Name, the website located at the Infringing Domain Name has been inactive. Currently, as of the date of this complaint, the Infringing Domain Name redirects to the domain name www.bluehour.com, but there is no active website located at www.bluehour.com. Further on information and belief, and based on a review of archived copies of the website maintained by the Wayback Machine (http://web.archive.org/), the Infringing Domain Name has not resolved to an active website since at least 2018.

20.      Just over a month after Crocs' acquisition of FFIL and its HEY DUDE brand became public, and mere weeks after Defendant registered the Infringing Domain Name, on March 28, 2022, counsel for Defendant contacted Crocs by e-mail to inquire if Crocs was "interested in purchasing [Defendant's] URL [www.heydude.com]." In its response, Crocs notified Defendant that "an offer to sell a domain based on a trademark to the trademark holder – such as here where the value of the domain hinges on the HEY DUDE brand – may constitute bad faith under the U.S. Anti-cybersquatting Consumer Protection Act (ACPA)[.]" So, Crocs explained that "while we must respectfully decline your client's

157986599.5 x

offer to sell the domain name to us, we may be open to reimbursing your client for reasonable out of pocket expenses incurred in the registration and renewal of the domain to date, in exchange for their transferring the domain name to Crocs."

21.     Defendant responded over a month later.  On May 10, 2022, Defendant's counsel responded to Crocs by letter.  In his letter, Defendant's counsel asserted that ownership of the Infringing Domain Name was passed to Defendant in 2014 through her husband's estate; argued that such transfer cleared Defendant of potential violations of the ACPA; stated that Defendant only contacted Crocs to sell the Infringing Domain Name— for *$10,000,000*—because she learned that the Infringing Domain Name would be valuable to Crocs because it consisted of Crocs' Hey Dude Trademarks; and claimed that Defendant was only offering to sell the Infringing Domain Name because after her "search[] online", she "learned that Crocs acquired HEYDUDE . . . for $2.5 Billion" and based on that purchase price, $10,000,000 "seems quite reasonable given the revenue HEYDUDE anticipates earning."

22.     According to her counsel, after Defendant learned that Crocs had acquired the HEY DUDE brand, she requested that her counsel "contact Crocs/HEYDUDE directly to inquire if your business would be interested in the URL."  Defendant offered Crocs two options:  purchase the domain name for $10,000,000 or "[l]ease the URL from [Defendant] for One Million Dollars ($1,000,000) per year for a minimum of five (5) years."

23.     The May 10 letter also stated that the ".com" domain name that consisted of Crocs' Hey Dude Trademarks was "superior to" the other related domain names owned by Crocs such as www.heydudeshoes.com and www.heydudeshoesusa.com.  It further noted

that purchasing the Infringing Domain Name would "complete [Crocs'] domain name portfolio" for the HEY DUDE brand.  Finally, the May 10 letter stated that if Crocs did not purchase the domain, Defendant "reserve[d] the right to contact other parties" about the selling the domain.

24.     In light of Defendant's excessive and unreasonable demands for payments for the Infringing Domain Name that far exceed her out of pocket cost for the domain, FFIL ceased discussions with Defendant.

## COUNT I

### Violation of the Anti-Cybersquatting Consumer Protection Act
### (15.S.C. § 1125(d))

25.     FFIL realleges and incorporates by reference paragraphs 1-24 of this complaint.

26.     FFIL's Hey Dude Trademarks were distinctive or famous and federally registered at the time of Defendant's registration of the Infringing Domain Name in March 2022.

27.     The Infringing Domain Name is identical or confusingly similar to FFIL's Hey Dude Trademarks, and consists solely of the HEY DUDE mark with the addition of the ".com" gTLD.

28.     On information and belief, Defendant registered the Infringing Domain Name with the intent of selling the domain name to FFIL or its parent company, Crocs. Because the domain name consisted solely of the HEY DUDE mark that was owned by FFIL who had been recently acquired by Crocs, Defendant initiated contact with Crocs and

157986599.5 x

offered to sell the Infringing Domain Name to Crocs for $10,000,000 or lease it for $1,000,000 per year.  Thus, Defendant registered, trafficked in, and used the Infringing Domain Name with a bad faith intent to profit from FFIL's Hey Dude Trademarks.

29.     On information and belief, Defendant does not have any trademark or other intellectual property rights in the Infringing Domain Name.

30.     On information and belief, the Infringing Domain Name does not consist of the legal name of Defendant, nor does it consist of a name that is otherwise commonly used to identify Defendant.

31.     On information and belief, Defendant has not made any prior use of the Infringing Domain Name in connection with the bona fide offering of any goods or services.

32.     On information and belief, Defendant has not made a bona fide noncommercial or fair use of the Hey Dude Trademarks on a website accessible at the Infringing Domain Name.

33.     On information and belief, Defendant offered to transfer, sell, lease or otherwise assign the Infringing Domain Name for financial gain without having used, or having an intent to use, the Infringing Domain Name in the bona fide offering of any goods or services.

34.     Prior to requesting $10,000,000 as payment for the Infringing Domain Name, Defendant was notified by Crocs that her offer to sell the domain may violate the ACPA. Thus, Defendant did not believe or have reasonable grounds to believe that her use of the Infringing Domain Name was fair use or otherwise lawful.

157986599.5 x

35.     Defendant's     acts     constitute     cybersquatting     in     violation     of 15 U.S.C. § 1125(d).

36.     As a consequence of Defendant's cybersquatting, FFIL has been and will continue to be irreparably harmed unless enjoined by this Court.  Therefore, FFIL has no adequate remedy at law and is entitled to injunctive relief, including transfer of the Infringing Domain Name to FFIL.

37.     Defendant knew or should have known of FFIL's rights in the Hey Dude Trademarks, and Defendant's infringement has been knowing, willful, and deliberate, making this an exceptional case within the meaning of 15 U.S.C. § 1117 and entitling FFIL to recover its attorneys' fees incurred in connection with this action.

38.     FFIL is entitled to recover Defendant's profits, FFIL's actual damages trebled, and the costs of this action.  Instead of actual damages and profits, FFIL may, at its election, be awarded statutory damages of $100,000 pursuant to 15 U.S.C. § 1117(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Full Fortune Intellectual Limited requests judgment against Defendant as follows:

A.     Judgment be entered in FFIL's favor on its claim;

B.     The Court issue an order that during the pendency of this litigation, Defendant be enjoined from transferring, selling, abandoning, or otherwise changing the registration of the Infringing Domain Name currently registered by Defendant;

157986599.5 x

C.   The Court find that Defendant has registered, trafficked in, and used the Infringing Domain Name with a bad faith intent to profit from one or more of FFIL's Hey Dude Trademarks in violation of 15 U.S.C. § 1125(d);

D.   The above acts were willful, knowing, and/or deliberate;

E.   The Court issue an order requiring Defendant to transfer the Infringing Domain Name to FFIL by reason of Defendant's cybersquatting in accordance with 15 U.S.C. § 1125(d)(1)(C);

F.   FFIL be awarded Defendant's profits in connection with the Infringing Domain Name, and all other damages permitted by law, including that these damages be trebled due to Defendant's willfulness as permitted by the provisions of 15 U.S.C. § 1117;

G.   At FFIL's election instead of actual damages or profits, FFIL be awarded $100,000 in statutory damages in connection with the Infringing Domain Name by reason of Defendant's cybersquatting in accordance with the provisions of 15 U.S.C. § 1117;

H.   FFIL be awarded its costs incurred in this suit, including but not limited to reasonable attorneys' fees; and

I.   For such other relief as the Court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury to decide all issues so triable in this case.

157986599.5 x

DATED:  September 2, 2022

Respectfully submitted,

_s/  John H. Sparks_

John H. Sparks, OBA No. 15661
Lisa M. Millington, OBA No. 15164
ODOM & SPARKS, PLLC
Suite 140
HiPoint Office Building
2500 McGee Drive
Norman, OK 73072
(405) 701-1863        Telephone
(405) 310-5394        Facsimile
sparksj@odomsparks.com
millingtonl@odomsparks.com

**Attorneys for Plaintiff**

157986599.5 x

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on September 2, 2022, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

<u>*s/ John H. Sparks*</u>
John H. Sparks

157986599.5 x